IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREAT AMERICAN INSURANCE )
COMPANY OF NEW YORK, *a New York* )
*Corporation* )
)
          Plaintiff, )
) CIVIL ACTION NO. 3:09-124
v. ) JUDGE KIM R. GIBSON
)
INTERNATIONAL CUSTOM )
PRODUCTS, INC., *a Pennsylvania* )
*Corporation*, and DENNIS RAYBUCK, *a* )
*Citizen of Pennsylvania*, )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER OF COURT

### I.   SYNOPSIS

**AND NOW**, this 31st day of March, 2011, this matter coming before the Court on Plaintiff Great American Insurance Company of New York's Motion for Partial Summary Judgment (Doc. No. 30) and Defendants International Custom Products, Inc. and Dennis Raybuck's Motion for Summary Judgment (Doc. No. 34). Each side opposes the other side's motion for summary judgment. The Court now **GRANTS** each motion IN PART AND **DENIES** each motion IN PART.

Plaintiff raises two arguments in its summary judgment motion. First, Plaintiff requests that this Court compel Defendants and Indemnitors, International Custom Products, Inc. and Defendant Raybuck (collectively "Defendants"), to deposit collateral in the amount of $550,000 with Great American Insurance Company of New York. Second, Plaintiff requests that this Court find the Defendants, as indemnitors, liable for all reasonable costs the Plaintiff has incurred or may incur as a result of claims by United States Custom and Border Protection ("U.S. Customs") on

customs bonds issued by the Plaintiff on behalf of Defendants. The Court grants summary judgment as to Plaintiff's first argument, and denies it as to the second argument. Defendants argue that the three agreements bond documents in question should be treated as separate documents, and that therefore they are not liable for indemnifying Plaintiff for the 2003 and 2004 bonds. Doc. No. 34. Therefore, Defendants ask that this court grant summary judgment, finding that 1) Defendants are not required to deposit collateral in the amount of $550,000 pending resolution of the related tariffs case now before the Court of International Trade ("CIT") (see infra); and 2) denying Plaintiff's claim for loss or damages incurred in defending that claim, because this issue is not yet ripe for adjudication, since the CIT case is still pending. Doc. No. 34. The Court denies summary judgment as to Defendants' first argument and grants it as to the second argument.

## II. JURISDICTION AND VENUE

Jurisdiction and venue are proper in this case. This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), diversity jurisdiction, in that the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states. The Plaintiff, Great American Insurance Company ("GAIC"), is a corporation organized under the laws of the State of New York, with its principal place of business in the State of Ohio, and is licensed to act as a surety in the State of Pennsylvania. Defendant, International Custom Products, Inc. ("ICP") is organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in DuBois, Pennsylvania. Defendant Dennis Raybuck is the president of corporate Defendant ICP and is a citizen of the Commonwealth of Pennsylvania, residing in DuBois, Pennsylvania. The matter in controversy exceeds the sum or value of $75,000. Venue is proper under 28 U.S.C. §1391(a) because all Defendants reside in this District.

## III. STANDARD OF REVIEW

Rule 56(c)(2) of the Federal Rules of Civil Procedure sets forth the standard for summary judgment. Summary judgment should be granted in favor of the movant where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The burden is on the movant to show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At 248. In reviewing the summary judgment record, the Court must "view the facts in the light most favorable to the nonmoving party." *Andreoli v. Gates*, 482 F.3d 641, 647 (3rd Cir. 2007). Furthermore, summary judgment is an appropriate method of resolving disputes concerning indemnification agreements. *United States Fid. & Guar. Co. v. Feibus*, 15 F.Supp.2d 579, 588 (M.D. Pa. 1998), aff'd, 185 F.3d 864 (3rd Cir. 1999); citing *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996).

## IV. FACTS

Plaintiff GAIC acts as a surety and is engaged in the business of issuing bonds, including custom bonds. Defendant ICP imported "White Sauce" for human consumption from New Zealand at various times in the years 2003, 2004, and 2005. In order to import the "White Sauce," ICP was required to post one or more customs bonds issued by a surety or sureties approved by and acceptable to United States Customs and Border Protection ("U.S. Customs"). In 2003, GAIC issued a customs bond designated by U.S. Customs listing ICP as the principal with a limit of liability of $150,000. In 2004, GAIC issued a customs bond listing ICP as the principal with a

3

limit of liability of $250,000. In 2005, GAIC issued a customs bond listing ICP as the principal with a limit of liability of $400,000. With each bond, GAIC and ICP executed General Agreements of Indemnity. Defendant Defendant Raybuck, is President of ICP. Defendant Raybuck signed the 2005 agreement in his individual capacity and as an additional indemnitor. On or about April 18, 2005, U.S. Customs issued a Notice of Action, reclassifying ICP's product, "White Sauce," under a different tariff classification with a much higher duty rate. As a result of the reclassification, U.S. Customs advised ICP that it would need a larger customs bond to continue to import "White Sauce." On May 9, 2005, ICP filed a lawsuit challenging the Notice of Action in the Court of International Trade ("CIT"). On or about May 18, 2005, the Office of Finance of U.S. Customs set a $10.6 million continuous bond requirement with respect to ICP's importation of "White Sauce." On June 2, 2005, the CIT agreed with ICP's position and issued a declaratory judgment that struck down the Notice of Action, declaring it to be null and void. On June 13, 2005, the Office of Finance reduced the continuous bond requirement to $400,000 based on the CIT's ruling on June 2, 2005. On June 17, 2005 and as a result of the June 2 judgment, U.S. Customs required ICP to post single-entry bonds in order to continue importing products. On September 13, 2005, ICP filed a new lawsuit challenging the single-entry bond requirement in the CIT. On September 15, 2005, the CIT granted a temporary restraining order to withdraw bond requirements through September 23, 2005, while the CIT considered ICP's requests for preliminary injunction (which would prevent bond requirements until the end of the case) and a permanent injunction (which would prevent bond requirements from being imposed ever again). Neither of the parties to this matter has submitted further information regarding the disposition of the CIT on the bond requirements. The parties have indicated in their briefs that the matter is still pending. By letter dated April 10, 2008 and received by GAIC on April 14, 2008, U.S. Customs

made demand on GAIC that it pay $250,000 on claims made with respect to the 2004 bond. By an undated letter received by GAIC on May 16, 2008, U.S. Customs made demand on GAIC that it pay $300,000 for two bond periods under the 2003 bond. By letter dated August 19, 2008 to Defendant Raybuck, GAIC requested that ICP post collateral to protect GAIC from the claims of U.S. Customs in the amount of $550,000. To date, ICP has not provided GAIC with any collateral.

## V. ANALYSIS

### A. Amended Complaint Accepted

The Plaintiff brings this action against Defendants seeking to have Defendants: 1) post collateral on bonds on behalf of Defendants; and 2) indemnify all reasonable costs incurred by Plaintiff. The Plaintiff argues that the plain language of the 2005 bond application is broad and general in nature and applies to all bonds issued by the Plaintiff on behalf of the Defendant, ICP. Furthermore, the Plaintiff argues that Defendant Raybuck's signature, as an additional indemnitor of the 2005 bond application, along with the retroactive clause in the 2005 agreement, allows for Defendant Raybuck to be found liable for all costs that are incurred by the Plaintiff. Doc. 43 at 2.

Defendants argue that since Plaintiff's theory of liability rests on the premise that the 2003, 2004 and 2005 bond applications constitute one contract by virtue of the inclusive language of the 2005 application, that therefore Plaintiff's claim is not ripe for adjudication because no costs have been incurred on the 2005 bond application. (The Plaintiff's complaint seeks relief for costs incurred on the 2003 and 2004 bond application only). Doc. 34 at 7.

In the alternative, Defendants argue that the 2003, 2004 and 2005 bond applications should be interpreted as three separate legal contracts, despite their identical language, and that therefore the 2005 agreement does not have retroactive effect. The Defendants also argue that common law

5

contractual interpretation of indemnity agreements, as well as the Plaintiff's litigation history, support a grant of summary judgment in favor of Defendants. Lastly, the Defendants argue that should this Court find that the three documents (2003, 2004, and 2005) are separate contracts, then this Court should also find that Defendant Raybuck is not liable for any costs under the 2003 or 2004 contracts, as these documents do not bear his signature. Since these findings would address all allegations in the complaint, Defendant Raybuck argues that upon making these findings this Court should grant summary judgment in his favor. In response, the Plaintiff requests leave of this Court to amend its complaint to include copies of the 2003 and 2004 bond applications which bear Defendant Raybuck's signature.

We find that the 2005 contract is ambiguous with respect to its retroactive application; therefore, the decision of whether to accept Plaintiff's amended complaint is crucial to the outcome of the Motions for Summary Judgment: failure to accept the amended complaint would result in a denial of summary judgment for both parties. However, since this Court will accept the amended complaint for the reasons stated below, this Court will provide a more detailed opinion with respect to the provisions in the parties' indemnity agreement.

In the past, the Third Circuit has allowed entry of an amended complaint where it was attached to a brief opposing a motion for summary judgment. See *Sola v. Lafayette College*, 804 F.2d 40, 40 (3rd Cir. 1986). As stated by the Court in *Sola*, under Rule 15 of the Federal Rules of Civil Procedure, leave to amend the complaint "shall be freely given when justice so requires." See Id.; see also Fed. R. Civ. P. 15(a)(2). In *Sola*, the Court held that the lower court was in error for not considering the party's claim raised in the brief and at oral argument as a motion to amend the complaint. See Id. at 45 *(citing Sherman v. Hallbauer*, 455 F.2d 1236 (5th Cir. 1972) (district court should have construed new legal theory raised in plaintiff's memorandum in opposition to

6

summary judgment as motion to amend complaint)).[1] Therefore, Plaintiff's new legal theory (found in the brief in opposition to Defendant's motion for summary judgment) that the 2003, 2004, and 2005 bond applications should be read as an integrated document, shall be considered an amendment to the Plaintiff's complaint.

## B. The Collateral Security Provision

The Plaintiff requests that this Court grant specific performance of the collateral provision in the indemnification agreement thereby requiring the Defendants to deposit collateral of $550,000 into Plaintiff's escrow account to pay demands made by U.S. Customs. Doc. No. 30 at 1). The Plaintiff's collateral security provision states:

> WHEREAS, Great American Insurance Company of New York, its heirs and assigns, (hereinafter called the Company), at the special instance and request of the Undersigned and because of the promise of the Undersigned to execute this indemnity agreement, has assumed or may in the future assume suretyship on bonds, or other obligations.
>
> NOW, THEREFORE, in consideration of the Company executing any of said bonds, the Undersigned jointly and severally hereby agrees:
>
> .......
>
> 5) upon demand by the Company, to deposit current funds with the Company in amount sufficient to satisfy any claim against Company by reason of such suretyship; . . .

See 2005, 2004, and 2003 Bond Applications.

The Defendants ask that this Court deny specific performance of the collateral provision because the Plaintiff's request is not ripe for adjudication. Specifically, the Defendants argue that the Plaintiff's claim is not ripe until Plaintiff has paid the bonds demanded by U.S. Customs.

---

[11] It should be noted that *Sola* rests on entirely different facts and legal claims than the case the Third Circuit relies on in *Hallbauer*, which indicates that the rule is to be applied broadly.

Defendants assert that the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201, requires that there be an actual case or controversy. Doc. No. 34 at 15). Moreover, the Defendants argue that the Plaintiff's claim is "contingent" on the outcome of pending litigation between the Defendants and U.S. Customs in the CIT and therefore fails to satisfy the requirements under the doctrine of ripeness. Doc. No. 34 at 16.

Defendants' arguments are not quite on point. The case law relied upon by Defendants supports arguments for ripeness generally and discusses legal issues related to indemnity agreements generally. However, the Plaintiff in this case is requesting specific performance of a collateral security provision; this type of factual scenario is governed by a narrower body of case law in this Circuit. Under a collateral security provision, similar to the one in this case where the surety requires funds from the principal before the surety pays a third party, the Principal (*i.e.*, the Defendant) "must provide the surety with funds which the surety is to hold in reserve." *United States Fidelity & Guar. Co., v. Feibus*, 15 F.Supp.2d 579, 588 (M.D. Pa. 1998). If the claims on the bonds are paid, then the surety will pay the loss from the principal's funds; otherwise, the surety must return the funds to the principal. See *Id.* Collateral security clauses have been routinely upheld in the Third Circuit. See *Id.*; citing *Tennant v. United States Fidelity & Guaranty Co.*, 17 F.2d 38 (3d Cir. 1927)); see also *Safeco Ins. Co. v. Enterprises, Inc.*, 2003 WL 21293825 (E.D. Pa. 2003); *Fidelity & Guaranty Ins. Co. v. Keystone Contractors, Inc.*, 2002 WL 1879476 (E.D. Pa. 2002). Such clauses have been upheld because "if a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." See *Id.*; quoting *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)). Therefore, in order to protect the surety's security position, courts have granted specific performance to such provisions. See *Tennant v. United States Fidelity & Guaranty Co.*, 17 F.2d 38

(3d Cir. 1927); *Safeco Ins. Co., v. Dematos Enterprises, Inc.*, 2003 WL 21293825 (E.D. Pa. 2003); *Fidelity & Guaranty Ins. Co. v. Keystone Contractors, Inc.*, 2002 WL 1879476 (E.D. Pa. 2002); *United States Fidelity & Guaranty Co., v. Feibus*, 15 F.Supp.2d 579 (M.D. Pa. 1998).

Normally, under an indemnity agreement with a collateral provision similar to the indemnity agreement in this case, the only conditions precedent to Defendants' obligations to provide collateral security are "(1) that a claim has been made against a bond issued by [Surety]; and (2) that [Surety] has made a demand for collateral." See *Safeco Ins. Co. v. Enterprises, Inc.*, 2003 WL 21293825 (E.D. Pa. 2003) (citing *Fidelity & Guaranty Ins. Co. v. Keystone Contractors, Inc.*, 2002 WL 1879476 (E.D. Pa. 2002)); *United Bonding Ins. Co. v. Stein*, 273 F. Supp. 929, 930 (E.D. Pa. 1967). Thus, a case is ripe for adjudication as soon as the surety has satisfied these two requirements (i.e., the conditions precedent in the provision). Consequentially, the Court should grant specific performance simultaneous to finding the matter ripe. The importance of protecting the surety's security position coupled with the minimal harm done to an indemnitor who must post collateral that may be given back if no actual demand is made on the surety strongly favors enforcing collateral security provisions when the conditions precedent have been met.

Based on the evidence provided by both parties in their briefs, the Plaintiff has met both requirements under the collateral provision of the Indemnity Agreement. First, a claim was made against bonds the Plaintiff issued. Specifically, the Plaintiff's claim attorney, Edward Dudley, stated that U.S. Customs made demand as to the 2003 and 2004 bonds. See Exhibit J, Dudley Dep. at 168-71. U.S. Customs demanded that Plaintiff pay $300,000 for the 2003 bond and $250,000 for the 2004 bond, totaling $550,000 for both bonds. See *id*. These key facts are undisputed by the parties. See ICP's response GAIC's Concise Statement of Martial Facts in Support of Partial Motion for Summary Judgment (admitting paragraphs 21 and 22). Therefore, it is undisputed that

9

U.S. Customs made a demand on bonds issued by the Plaintiff and a reasonable jury could not return a verdict in favor of the nonmoving party (the Defendant) on that issue in this case.

However, the parties dispute whether the Plaintiff has made demand for collateral. Plaintiff argues that the July 8, 2008 letter titled "Great American's Demand for Collateral from International Custom Products" along with the deposition of Defendant Raybuck, President of ICP, in which Defendant Raybuck agreed that Plaintiff made demands to ICP and himself, show that demand was properly made on the Defendants. Furthermore, Plaintiff points to the complaint requesting specific performance as support for the argument that demand was made on Defendants. See GAIC's Reply Brief in Support of Its Motion for Partial Summary Judgment. Additionally, Plaintiff sent a letter on August 19, 2008 to Defendant Raybuck, requesting collateral in the amount of $550,000. See ICP's Response to GAIC's Motion for Partial Summary Judgment. Defendants disagree with this analysis and argue that Plaintiff's demands with respect to the 2003 and 2004 bonds were based on the theory of retroactive application of the 2005 bond (which Defendants argue does not apply retroactively) and that Defendant Raybuck is not liable under the 2003 and 2004 bond agreements because he did not sign those agreements as an additional indemnitor. See *Id.* Since this Court has accepted Plaintiff's amended complaint, the Plaintiff has satisfied the second requirement under the Indemnity Agreement: the Plaintiff properly showed, through various evidence, that a definite demand was made to ICP and to Defendant Raybuck. There is no evidence put forth by the Defendants that would show a reasonable jury could return a verdict in favor of the Defendants that an actual demand was not made to ICP or Raybuck. Disputing the validity of a demand is different than disputing the fact that a demand was actually made. Defendants fail to effectively argue against the latter. Therefore, Plaintiff's claim is ripe for adjudication, and Plaintiff's demand for specific

performance should be enforced.

Accordingly, the Plaintiff is entitled to specific performance of the collateral provision and Defendant must post $550,000 to be held in Plaintiff's escrow account. The $ 550,000 shall not be released from escrow in favor of Plaintiff until all other matters pending in the CIT have been fully adjudicated. Specifically, if the United States obtains a judgment in its favor in the CIT then the $550,000 should be released to Plaintiff. On the other hand, if the Defendants obtain a judgment then the $ 550,000 will revert back to Defendants. The importance of protecting GAIC's security position when compared to the miminal harm which will be incurred by Defendants by virtue of their posting collateral, which collateral will be returned should the case pending before the CIT be resolved in favor of Defendants, point strongly in favor of granting Plaintiff's motion for partial summary judgment.

### C. The Duty to Indemnify Provisions

This Court notes that the Plaintiff's second request for relief in its Partial Motion for Summary Judgment (Doc. No. 30 at 1) is a bit ambiguous. Plaintiff asks this Court to find Defendants "liable for all reasonable costs...incurred or may incur as a result of claims by United States Customs...on Custom bonds issued by [GAIC] on behalf of [ICP]." Doc. No. 30 at 1. We interpret this as a request by Plaintiff to enforce of the remainder of the Indemnity Agreement, which Plaintiff believes will be accomplished by making Defendants indemnify the Plaintiff for reasonable costs incurred in enforcing the agreement, as Plaintiff interprets it.

Since the amended complaint has been accepted, Plaintiff's argument is that there is no dispute that ICP executed the bond applications in 2003 and 2004. (See Doc. No. 43 at 8). Although Defendant Raybuck signed as an additional indemnitor only in the 2005 bond application, the Plaintiff argues that Defendant Raybuck is a party to the 2003 and 2004

11

applications because the 2005 application has retroactive effect. While acknowledging that the language of the 2003, 2004 and 2005 bond applications are identical, Defendants argue that the 2005 agreement does not have retroactive effect and that each document should be interpreted as a separate agreement. The Defendants also argue that the common law on contractual interpretation and the Plaintiff's litigation history mandate that this Court grant the summary judgment in favor of the Plaintiff. Additionally, the Defendants argue that, since the three agreements should be read separately and Defendant Raybuck did not sign the 2003 and 2004 agreement, he should not be found liable for any costs to the Plaintiff. Finally, Defendants argue that the second claim in the Plaintiff's partial motion for summary judgment, the duty to indemnify, is not ripe for adjudication. Defendants' ripeness argument is the same ripeness argument used against the enforcement of the collateral provision. See supra; see also Doc. No. 34. This time the Defendants' arguments prevail.

A federal court sitting in diversity must apply the substantive law of the state in which it sits. See *Insurance Commissioner of Conn. v. Novonty*, 2009 WL 1653553, *2 (W.D. Pa. 2009) (citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3rd Cir. 2006)). "In determining when a claim accrues, Pennsylvania law distinguishes between agreements that indemnify against liability and agreements that indemnify against loss." See *id* (citing *Coleman v. City of Bradford*, 415 Pa. 557, 204 A.2d 260, 261 (Pa. 1964)). In *Bradford*, the Pennsylvania Supreme stated that:

> Where the contract is strictly one of indemnity [i.e., indemnity against loss] the indemnitee cannot recover until he has suffered actual loss or damage. The mere incurring of liability gives him no such right; but, where the contract is to protect against liability, the indemnitee may recover as soon as liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover. See *Bradford*, 204 A.2d at 261 (internal citations and quotations omitted).

In other words, an action for indemnity against loss accrues when the indemnitee suffers actual loss or damage. See *Novonty*, 2009 WL 1653553 at *3; *Bradford*, 204 A.2d at 261; *Hughes v. Prudential Lines, Inc.*, 425 Pa. Super. 262, 624 A.2d 1063, 1064-5 (Pa. Super. 1993). Conversely, an action for indemnity against liability accrues when the liability becomes fixed and established. See *Bradford*, 204 A.2d at 261. Pennsylvania courts have not defined "fixed and established," but other courts have. See *Novonty*, 2009 WL 1653553 at * 4 (citing *Burns & McDonnell Engineering Co., v. Torson Constr. Co., Inc.*, 834 S. W.2d 755 (Mo. App. 1992) ("[M]ere assertion of a claim against indemnitee does not 'fix and establish' liability, but only subjects the party to potential liability to be determined with the outcome of the [underlying] lawsuit. Therefore, a cause of action for indemnity against liability cannot accrue until the claim against the indemnitee is completely resolved.")). Most courts have concluded that the resolution of the underlying claim does not occur until a settlement agreement is reached or judgment is entered. See *Novonty*, 2008 WL 1653553 at * 4 (citing *Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 40 A.D.3d 978, 839 N.Y.S.2d 91 (2007) (liability became fixed with the execution of settlement agreement); and *United States Fidelity & Guaranty Co. v. Sequip Participacoes*, S.A., 2003 WL 22743430 (S.D.N.Y. 2003) (liability accrues once the indemnitee's liability to others has been fixed and established by a judgment against the indemnitee).

The indemnity provision in the parties' agreements in 2003, 2004, and 2005 states: "...2) to completely INDEMNIFY the Company from and against any *liability, loss*...which the Company shall sustain at any time..." (See 2003, 2004, and 2005 bond applications) (emphasis added). The contract provision can be interpreted as both an agreement to indemnify against liability and loss. Regardless of the reasonable interpretation, although the parties dispute which type of agreement the provision contains, the Plaintiff does not have a ripe claim under an agreement to indemnify

13

against loss *or* liability. It is undisputed that the Plaintiff has not actually paid U.S. Customs and therefore the Plaintiff has not suffered actual loss or damage. Futhermore, liability is not fixed and established because the underlying claim between the GAIC and U.S. Customs is not resolved. The Plaintiff has not put forth evidence that a settlement agreement has been reached or executed between itself and U.S. Customs. Moreover, there is no evidence in the record that judgment has been entered in favor of U.S. Customs, thereby allowing the Plaintiff to request indemnification from Defendants. In fact, the record shows that the Plaintiff's counsel sent a letter to U.S. Customs asking U.S. Customs to hold claims pending resolution of the related CIT case. (See Exh. L, attached to Doc. 30). Additionally, the Plaintiff has not put forth any evidence of any response or counter-offer from U.S. Customs, such as a settlement agreement. As a matter of law, the Plaintiff has not proven that liability is fixed and established in this case.

Therefore, the Plaintiff's indemnity claim is not ripe for adjudication because the Plaintiff has failed to prove any actual loss or damage *or* that any liability is fixed or established via execution of a settlement agreement or a judgment in favor of U.S. Customs. Therefore, summary judgment on this claim is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, *a New York Corporation* | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO. 3:09-124<br>) JUDGE KIM R. GIBSON<br>) |
| INTERNATIONAL CUSTOM PRODUCTS, INC., *a Pennsylvania Corporation*, and DENNIS RAYBUCK, *a Citizen of Pennsylvania*, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## ORDER

**AND NOW**, this 31st day of March, 2011, this matter coming before the Court on Plaintiff Great American Insurance Company's Motion for Partial Summary Judgment (Document No. 30) and Defendants International Custom Products, Inc. and Dennis Raybuck's Motion for Summary Judgment (Doc. No. 34), **IT IS HEREBY ORDERED** that each motion is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** as to Plaintiff's request that this Court order the posting of $550,000 collateral by Defendants in an escrow fund pending resolution of liability/indemnity claims; while we do not at this stage comment on the validity of Plaintiff's claim over the funds in that escrow, we find that a demand has been made, triggering the requirement that the escrow fund be maintained. On the other hand, Defendants are correct that pending the resolution of the case before the Court of International Trade (the "CIT"), the issue of liability for indemnification is not yet ripe. Therefore, we **GRANT** Defendants' Motion for Summary Judgment as to the liability issue, with leave granted to Plaintiff to reassert the claim

should the case before the CIT be resolved in favor of U.S. Customs.  Both motions are **DENIED** in all other respects.

BY THE COURT:

_____
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**