IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, *a New York Corporation*, | ) ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 3:09-124 |
| v. | ) ) | JUDGE KIM R. GIBSON |
| INTERNATIONAL CUSTOM PRODUCTS, INC., *a Pennsylvania Corporation*, and DENNIS RAYBUCK, *a Citizen of Pennsylvania*, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on Defendant Raybuck's Motion for Reconsideration (Doc. No. 55) of the Court's Memorandum Opinion and Order of Court (Doc. No. 54), which granted in part and denied in part the parties' cross-motions for summary judgment (Doc. Nos. 30, 34). For the reasons that follow, the Court will reconsider its previous decision but **DENY** Defendant Raybuck's other requests for relief.

### II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(a) because Defendants reside in the Western District of Pennsylvania.

### III. BACKGROUND[1]

On May 19, 2010, Plaintiff Great American Insurance Company of New York ("Great

---

[1] The Court previously set out the facts of the case in its Memorandum Opinion and Order of Court and need not reiterate them here. The Court will also limit its discussion of the procedural history of this case to those portions relevant to the disposition of the motion for reconsideration.

1

American") filed a Motion for Partial Summary Judgment requesting that this Court: (1) compel Defendants International Custom Products, Inc. ("ICP") and Dennis Raybuck ("Raybuck," collectively "Defendants") to post $550,000 collateral with Great American pursuant to a 2005 Indemnification Agreement; and (2) declare that Defendants are liable as indemnitors for all reasonable costs Great American has or may incur as a result of claims made against bonds issued by Great American on behalf of ICP. (See Doc. No. 30 at 1). Defendants also moved for summary judgment on that date claiming that: (1) Defendants cannot be liable under the 2005 Indemnification Agreement for claims made against bonds issued by Great American in 2003 and 2004; and (2) the Court cannot issue a declaration regarding Defendants' duty to indemnify because the issue is not ripe for adjudication. (See Doc. No. 34 at 1-2).

On March 31, 2011, after briefing on the parties' motions, the Court issued its Memorandum Opinion and Order of Court ("March Order"). (See Doc. No. 54). The March Order permitted Great American to amend its Complaint to incorporate indemnification agreements which were executed in 2003 and 2004, and granted in part and denied in part the parties' motions for summary judgment. Specifically, the Court: (1) concluded that Great American is entitled to specific performance of the contractual provisions obligating Defendants to post collateral; and (2) denied Great American's request for a declaration as to Defendants' duty to indemnify as unripe.

Raybuck filed a Motion for Reconsideration (Doc. No. 55) of the March Order on April 14, 2011, and the Court issued an order (Doc. No. 74) staying Defendants' obligation to post collateral until the disposition of the motion for reconsideration. The Court has considered the parties' extensive briefings and arguments, (see Doc. Nos. 56, 62, 63, 70, 73, and 76), and the motion is now ripe for disposition.

## IV. STANDARD OF REVIEW

Raybuck filed the motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). "The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1998)). As the Third Circuit has explained, a judgment may be altered or amended if the party seeking reconsideration demonstrates at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis*, 591 F.3d at 669 (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *Quinteros*, 176 F.3d at 677. Furthermore, "[m]ere 'dissatisfaction with [a court's] ruling is not a proper basis for reconsideration." *Holbrook v. Woodham*, Civ. A. No. 3:05-304, 2007 U.S. Dist. LEXIS 50966, *4 (W.D. Pa. 2007) (quoting *Velazquez v. UPMC Bedford Mem'l Hosp.*, 338 F. Supp. 2d 609, 611 (W.D. Pa. 2004)); see also *Lazaridis*, 591 F.3d at 669 (upholding a district court's denial of a motion for reconsideration because advancing "the same arguments that were in [the movant's] complaint and motions" was "not a proper basis for reconsideration").

## V. DISCUSSION

Raybuck contends that: (1) manifest injustice will result from the clear error of law which underlies the March Order; and (2) if the Court concludes that it committed no error, he should be granted leave to file interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court will address each of these arguments in turn.

## A. Reconsideration

In his motion and supporting briefs, Raybuck requests that this Court reconsider the March Order, reverse the portion which obliges him to post collateral, and enter summary judgment in his favor. (See Doc. No. 55 at 1). He claims that these actions are warranted because the Court erred in two ways. First, the Court "misapprehended whether Raybuck executed two critical documents . . . [and] the capacity in which he did so." (*Id.*). Second, the Court "should have addressed the issue of whether or not the [2005 Indemnity Agreement] had retroactive effect, and [the Court] should have resolved that issue in Raybuck's favor." (*Id.* at 3). The Court has reconsidered the March Order, but for the reasons stated below, it will deny Raybuck's other requests for relief.

### 1. Document Execution

Raybuck first contends that this Court's March Order erroneously stated "that Raybuck, acting in his personal capacity, executed guaranties as part of the [2003 and 2004 Agreements][.]" (Doc. No. 56 at 1). "But for this misunderstanding[,]" he claims, "there is no basis on which [he] can be required to post collateral or be held liable in this action on any basis at all." (*Id.* at 2). Contrary to Raybuck's contention, this Court repeatedly and appropriately recognized that Raybuck signed only the 2005 Indemnity Agreement in his individual capacity.[2]

---

[2] In its March Order, the Court noted that "Raybuck signed *the 2005 agreement* in his individual capacity and as an additional indemnitor." (Doc. No. 54 at 4) (emphasis added). The Court also considered Plaintiff's argument that "Defendant Raybuck's signature, as an additional indemnitor *of the 2005 bond application*, along with the retroactive clause in the 2005 agreement, allows for Defendant Raybuck to be found liable for all costs that are incurred by the Plaintiff." (*Id.* at 5) (emphasis added). Finally, in response to Defendant Raybuck's contention that he "is not liable for any costs under the 2003 or 2004 contracts, as these documents do not bear his signature[,]" the Court noted that "the Plaintiff requests leave of this Court to amend its complaint to include copies of the 2003 and 2004 applications which bear Defendant Raybuck's signature." (*Id.* at 6). To be clear, both the Court's March Order and its instant decision are based on the understanding that Defendant Raybuck signed only the 2005 Indemnity Agreement in his individual capacity.

4

The Court, therefore, concludes that it did not commit a clear error of law regarding its original consideration of the execution of the indemnification agreements.

## 2. Retroactivity of the 2005 Indemnity Agreement

Raybuck next asserts that the Court should reconsider the retroactivity of the 2005 Indemnity Agreement[3] and grant summary judgment in his favor.[4] (See Doc. No. 56 at 3). After extensive briefing and argument by the parties, (see Doc. Nos. 56, 62, 63, 70, 73, and 76), the Court will reconsider its interpretation of the agreement.

### i. Contract Interpretation under Pennsylvania Law

As the Court noted in its Order, Pennsylvania law governs the interpretation of the 2005 Indemnity Agreement in this diversity action. (Doc. No. 54 at 12). In *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154 (3d Cir. 2011), the Third Circuit recently explained how insurance contracts are to be interpreted under Pennsylvania law. To wit:

> The rules of analysis of insurance policies in Pennsylvania are well established. The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy. A policy must be read as a whole and its meaning construed according to its plain language.
>
> The burden of drafting with precision rests with the insurance company, the author of the policy. An ambiguity in contract language exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood

---

[3] The Court originally found that "the 2005 contract is ambiguous with respect to its retroactive application[.]" (Doc. No. 54 at 6).

[4] In support of this contention, Defendant Raybuck raises the same arguments contained in his original motion for summary judgment. (See Doc. No. 56 at 8) ("The reasons why this Court should determine that Raybuck are [sic] set forth fully in the Defendants' memorandum in support of their motion for summary judgment, their brief in response to [Plaintiff's] brief and their reply brief in support of their motion."). Rehashing these same arguments is not an appropriate basis for reconsideration. See *Lazaridis*, 591 F.3d at 669. Defendant Raybuck also contends that the Third Circuit's decision in *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154 (3d Cir. 2011) supports reversing this Court's previous decision. (See Doc. No. 70) (citing *Meyer* for the proposition that contractual ambiguities must be construed against the drafter). As discussed infra, the Court concludes that: (1) the 2005 Indemnity Agreement is unambiguous; and (2) *Meyer* supports granting summary judgment for Plaintiff as to Defendants' duty to post collateral.

5

in more than one sense. Where a term is ambiguous, it is to be construed against the insurer, in favor of the insured. The policy rationale underlying strict application of the doctrine is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion.

Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. Courts should not distort the meaning of the language or strain to find an ambiguity. A contract is not rendered ambiguous merely because the parties disagree about its construction.

*Meyer*, 648 F.3d at 163-64 (citations and quotation marks omitted). Given this understanding, the Court will examine the 2005 Indemnity Agreement.

### ii. 2005 Indemnity Agreement

Raybuck argues that under the terms of the 2005 Indemnity Agreement, he cannot be held personally responsible to indemnify Great American or post collateral for claims against any bonds issued by Great American before 2005. (See Doc. No. 70 at 3). Specifically, Raybuck contends that the agreement is ambiguous as to Raybuck's obligation to indemnify Great American for losses related to suretyship on bonds assumed before 2005, and that this ambiguity should be resolved against the drafter of the agreement, Great American. (See *id.* at 2). The 2005 Indemnity Agreement, which was executed by an officer of ICP, provides in pertinent part:

> [Great American] . . . , at the special instance and request of [ICP] and because of the promise of [ICP] to execute this indemnity agreement, *has assumed or may in the future assume suretyship on bonds*, or other obligations . . . . [I]n consideration of [Great American] executing any of *said bonds*, [ICP] . . . hereby agrees . . . to completely INDEMNIFY [Great American] from and against any liability, loss, cost, attorneys' fees, and expenses whatsoever which [Great American] shall at any time sustain as surety *on any of said bonds*, or for the enforcement of this agreement; . . . [and] upon demand by [Great American], to deposit current funds with [Great American] in an amount sufficient to satisfy any claim against [Great American] by reason of such suretyship.

6

(Doc. No. 31-7; see also Doc. No. 56 at 3; Doc. No. 73 at 3) (emphasis added). Raybuck joined this agreement as an additional indemnitor.[5]

The Court finds that the language of this 2005 Indemnity Agreement is clear and unambiguous. The agreement unequivocally states that Great American "has assumed or may in the future assume suretyship on bonds[,]" and that in consideration of Great American's execution of "said bonds," ICP agrees to: (1) completely indemnify Great American from any loss or liability which Great American "shall at any time sustain as a surety on any of said bonds"; and (2) deposit funds sufficient to "satisfy any claim against [Great American] by reason of such suretyship." (See Doc. No. 31-7). The language is equally clear stating that Raybuck joins the agreement as an additional indemnitor, thereby obligating Raybuck personally to perform as described above. Thus, the clear language of the contract requires Raybuck to indemnify Great American for any loss suffered which results from Great American's *past or future* assumption of suretyship on bonds. It also requires Raybuck, upon demand by Great American, to deposit sufficient funds to satisfy any claim against Great American by reason of such suretyship. The Court will not distort this plain language or strain to find ambiguity; rather, it is required to enforce the unambiguous language of the 2005 Indemnity Agreement. See *Meyer*, 648 F.3d at 164.

In its March Order, the Court required Defendants to post $550,000 collateral in escrow with Great American for claims made against the 2003 and 2004 bonds. (Doc. No. 54 at 15). Such a situation falls squarely within Raybuck's contractual obligation because, as discussed above, the clear language of the agreement requires Raybuck to deposit sufficient funds with Great American to satisfy claims against it by reason of such suretyship. Thus, the Court will

---

[5] Raybuck signed as "Indemnitor #1" below a provision of the 2005 Indemnity Agreement which provides that: "In consideration of the execution by [Great American] of this bond herein applied for, the undersigned, jointly and severally, join in the foregoing indemnity agreement[.]" (Doc. No. 31-7).

enforce the plain language of the agreement and **DENY** Raybuck's motion for reconsideration. Pursuant to the unambiguous language of the 2005 Indemnity Agreement, Raybuck must post collateral as previously ordered by the Court.[6] Accordingly, the Court will **VACATE** its order (Doc. No. 74) staying Defendants' obligation to post collateral pending the Court's consideration of the instant motion for reconsideration.

### B. Interlocutory Appeal

Because the Court has upheld its interlocutory March Order concluding that the 2005 Indemnity Agreement obligates Defendants to post collateral,[7] the Court must next consider Raybuck's request that the issue be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (See Doc. No. 55 at 3). As the Third Circuit has explained, pursuant to § 1292(b) a district court may exercise its discretion and certify an order for interlocutory appeal where three criteria are met: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974); see also *Travelers Indem. Co. v. ADT Sec. Sys.*, Civ. A. No. 06-4181, 2010 U.S. Dist. LEXIS 7878, *3 (E.D. Pa. 2010) (citing *Katz*). However, interlocutory review of a district court's interpretation of a contract is *inappropriate* because it "involves mixed questions of law and fact[,]" and "Section 1292(b) was not designed to secure appellate review of factual matters or of the application of the acknowledged law to the facts of a particular case[.]" See *Glover v. Udren*,

---

[6] Raybuck also contends that manifest injustice would result from the enforcement of the March Order because "[t]he burden of posting collateral would . . . fall entirely on Raybuck" because ICP ceased operations in 2005. (Doc. No. 56 at 13). The Court concludes, however, that no injustice would result from requiring Raybuck to actually perform as promised under the terms of the 2005 Indemnity Agreement he signed in his individual capacity.

[7] An order granting partial summary judgment is an interlocutory order. See *Foulk v. Donjon Marine Co.*, 144 F.3d 252, 255 (3d Cir. 1998); *United States v. RMI Co.*, 661 F.2d 279 (3d Cir. 1981); *Greenspan v. ADT Sec. Servs.*, Nos. 10-2901 & 10-2902, 2011 U.S. App. LEXIS 19341 (3d Cir. 2011) (stating that "the district court had jurisdiction to issue an interlocutory decision granting partial summary judgment").

8

Civ. A. No. 08-990, 2011 U.S. Dist. LEXIS 83837, *5-6 (W.D. Pa. 2011) (citing *Krishanthi v. Rajaratnam*, Civ. A. No. 09-5395, 2011 U.S. Dist. LEXIS 53470 (D.N.J. 2011)); see also *Moore's Federal Practice*, Civil § 203.31 ("[T]he question of the meaning of a contract, although technically a question of law when there is no other evidence but the written contract itself, is not what the framers of § 1292(b) had in mind.").

Instantly, the Court will decline to exercise its discretion to certify to the Third Circuit the issue of Raybuck's duty to post collateral because § 1292(b) was not designed to secure interlocutory appellate review of the Court's interpretation of unambiguous contractual provisions. Moreover, Raybuck's request does not satisfy the second criterion of § 1292(b): the existence of a substantial ground for difference of opinion. There is no "genuine doubt as to the correct legal standard" governing the interpretation of insurance contracts under Pennsylvania law.[8] Additionally, although Raybuck disagrees with the Court's interpretation of the 2005 Indemnity Agreement, "a party's disagreement with the Court's ruling is insufficient to establish a substantial ground for difference of opinion[.]" See *Glover*, 2011 U.S. Dist. LEXIS 83837 at *6. Therefore, the Court will **DENY** Raybuck's request to certify the issue for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).

## VI. CONCLUSION

Upon review of Raybuck's Motion for Reconsideration (Doc. No. 55), the Court reverses its previous finding regarding the ambiguity of the 2005 Indemnity Agreement but upholds its Memorandum Opinion and Order of Court (Doc. No. 54) on other grounds. Accordingly, it is **ORDERED** that: (1) the Court's order (Doc. No. 74) staying Defendants' obligation to post collateral is **VACATED**; (2) Raybuck's request for certification for interlocutory appellate

---

[8] As discussed above at length, the rules governing the interpretation of insurance contracts under Pennsylvania law are well established.

9

review pursuant to 28 U.S.C. § 1292(b) is **DENIED**; and (3) Defendants must post $550,000 collateral in escrow with Great American. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, *a New York Corporation* | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 3:09-124<br>JUDGE KIM R. GIBSON |
| INTERNATIONAL CUSTOM PRODUCTS, INC., *a Pennsylvania Corporation*, and DENNIS RAYBUCK, *a Citizen of Pennsylvania*, | |
| Defendants. | |

## ORDER

**AND NOW**, this 31st day of October, 2011, in accordance with the Memorandum, the Court reverses its previous finding regarding the ambiguity of the 2005 Indemnity Agreement but upholds its Memorandum Opinion and Order of Court (Doc. No. 54) on other grounds. Accordingly, it is **ORDERED** that: (1) the Court's order (Doc. No. 74) staying Defendants' obligation to post collateral is **VACATED**; (2) Defendant Raybuck's request for certification for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b) is **DENIED**; and (3) Defendants must post $550,000 collateral in escrow with Great American.

BY THE COURT:

_____
**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**